# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42621

STAFFORD L. SMITH,               )
                                    )

    Plaintiff-Counterdefendant-Respondent,   )

                                    )      **Boise, February 2016 Term**

v.                                  )

                                    )      **2016 Opinion No. 90**

WOODRUFF D. SMITH,         )

                                    )      **Filed: September 9, 2016**

    Defendant-Counterclaimant-Third Party  )
    Plaintiff-Appellant,               )      **Stephen Kenyon, Clerk**

                                      )

and                                   )

                                      )

SMITH CHEVROLET CO., INC., and     )
STAFFWOOD PARTNERSHIP,        )

                                      )

    Third Party Defendants-Respondents.   )

---

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Jon J. Shindurling, District Judge.

The judgment of the district court is <u>affirmed</u>.

Ray Quinney & Nebeker P.C., Salt Lake City, Utah, for appellant. Robert P. Harrington argued.

Preston & Scott and Snow, Christensen & Martineau, Salt Lake City, Utah, for respondents. Stanley J. Preston argued.

---

HORTON, Justice.

      Woodruff Smith appeals from the district court's grant of judgment on the pleadings and award of attorney fees to Stafford Smith in a suit seeking specific performance of a contract. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

      Stafford Smith and Woodruff Smith (Woody) are brothers. Their father established Smith Chevrolet, and over the years the brothers have co-owned several auto dealerships, other businesses, and parcels of real property. The brothers each own 50% of Staffwood, an entity that

owns properties and other assets. In 2010, a dispute arose between the brothers involving their business dealings, and on November 10, 2010, the brothers entered into a settlement agreement (the 2010 Agreement) that gave ownership of Smith Chevrolet to Stafford. The 2010 Agreement also identified four parcels of land that either brother could purchase through a bid process. These parcels are described as the Smith Chevrolet Property, RV Property, Outlet Property, and Motor City Property. Between 2010 and 2012, various transactions occurred between Smith Chevrolet, Woody, Stafford, and Staffwood which culminated in another dispute between the brothers and another settlement agreement (the 2012 Agreement). The 2012 Agreement provided that each brother had the right to initiate a bid process to purchase the properties owned by Staffwood.

In 2013, Stafford initiated the process to purchase the Smith Chevrolet Property, RV Property, and the Outlet Property (collectively "the Bid Properties") from Staffwood. Woody countered with his own bid, and the brothers then entered into a bidding war that lasted several months. Throughout 2013, the brothers placed bids and discussed terms regarding the purchase of the Bid Properties from Staffwood. On October 17, 2013, Woody placed a bid for the Bid Properties, and Stafford withdrew from the bidding process.

On December 4, 2013, Woody sent a letter to the management of Staffwood in which he asserted that he had won the bidding process and asked Stafford to clear the title to the Smith Chevrolet Property. On December 20, 2013, Stafford sent a letter to Woody indicating that he was willing to purchase the Bid Properties. On December 20, 2013, Stafford's attorney wrote to Woody's attorneys and represented:

> Stafford is willing to purchase the subject properties from Staffwood, including the Outlet Center property, on the following terms and conditions:
>
> 1. Stafford will pay the sum $2,800,000 for the properties that were the subject of the bid process, which amount is $50,000 more than his last bid;
>
> 2. The funds Woody has escrowed under the bid process will be returned to him at closing;
>
> 3. In light of the holidays, the closing on Stafford's purchase will take place thirty (30) days from the date the parties sign an agreement as to the terms of Stafford's purchase of the subject properties;
>
> 4. The net proceeds from the sale of the subject properties will be divided between Staffwood's partners after satisfying the following obligations:
>
>     a. Payment in full of Staffwood's loan from Wells Fargo Bank;

b. Payment to Smith Chevrolet of the funds it has advanced above its lease obligation on behalf of Staffwood to ensure adequate funds for Staffwood to pay its ongoing obligations, which payment is pursuant to the parties' agreement as set forth in Section 10.4 of the July 5, 2012 Settlement Agreement. These obligations include, but are not limited to, accounting costs, taxes, insurance, maintenance, repairs and servicing the Wells Fargo Bank loan. Exact amounts to be repaid to Smith Chevrolet shall be determined by means of an audit conducted by Staffwood's accountant, Kevin Oakey, but said amounts are anticipated to be in excess of $350,000; and

c. Staffwood's retention of a mutually agreed amount as a reserve to enable Staffwood to pay its ongoing obligations on its remaining properties. Stafford recommends that the retained sum should be $50,000 but in no event should the retained amount be less than $20,000.

In addition, as you are aware, the sale of Staffwood's Pocatello property will take place in the near future. Woody has agreed to the terms of the sale, but requested that the proceeds from the sale not be distributed until the parties reach a settlement agreement. Stafford estimates that the net proceeds from this sale will be approximately $230,000. Assuming the sale takes place as planned, it is proposed that the net proceeds from this sale be distributed to the partners once an agreement is signed in writing regarding Stafford's purchase of the subject bid properties or, alternatively, that these funds be distributed simultaneously with the closing of Stafford's purchase of the bid properties.

Of course, once we reach an agreement on Staffwood's [sic] purchase of the bid properties, we will expect to promptly receive your proposal for dividing Staffwood's remaining properties between the partners. Please let me know as soon as possible whether the foregoing is acceptable to your client.

On January 13, 2014, Woody's attorneys responded by a letter to Stafford's attorney:

Woody hereby accepts Stafford's offer as set forth in your letter of December 20, 2013.

For purposes of certainty and clarification, we set forth below further detail about our understanding of the terms of settlement. In paragraph no. 8 below, we propose that the parties attempt to agree on a way that this transaction may be done on a tax free basis. Woody's accountants believe that by treating the entire transaction as a distribution in dissolution of the parties' interests in Staffwood, the parties can come out the same as agreed without incurring negative tax consequences. This would seem to be beneficial to both parties, but since this provision is outside of the terms of Stafford's offer, we make clear that we do not require Stafford's agreement to paragraph no. 8.

Also, as requested, we propose a division of the balance of the Staffwood property, which we have set forth below. It does not matter to Woody which election Stafford makes of these two Property Sets. We do not see how the

property can be divided any other way without resulting in joint or adjacent ownership of any properties, which may cause conflict or irritation in the future.

Accordingly, the points of understanding are as follows:

1. Stafford closes on the 3 bid properties at $2.8 million ("Closing"), which Closing is to be held within 30 days of the date hereof. [FN1: You indicated that Stafford needed 30 days because of the holidays. Now that the holidays have passed, Woody is willing to close this in a much shorter time frame if Stafford is able to do so. Earlier closing will also save the parties additional interest.]

2. Funds escrowed by Woody in the bid process shall be returned upon finalizing this agreement.

3. All funds from the Closing shall go to the account of Staffwood, and shall be disbursed as follows: (a) payoff of Wells Fargo loan (assumed to be about $875,000 at closing); and (b) refund of rent overpayment by Smith Chevrolet and other expenses mentioned in your letter, will be set at $350,000. [FN2: An audit of this amount would delay the Closing. Woody proposes to set this at $350,000 and be done with it.] Balance of funds from Closing shall be distributed equally to the partners.

4. The balance of the properties shall be divided into two sets of property/cash as set forth below. Stafford shall have the choice to choose Property Set A or Property Set B, and Woody shall receive the Property Set not elected by Stafford.

| Property Set A | Property Set B |
|---|---|
| *Snake River Landing Property | Bellon Road Property |
| Less: $400, 000 Cash to Property B Recipient | Blackfoot property |
| | **Pocatello property |
| | $400,000 Cash from Property A Recipient |

*Recipient A assumes and pays, and holds Recipient B harmless from, the $1.9 million note and deed of trust pertaining to this property.

**Recipient B shall receive all proceeds from the recent sale of this property.

5. Staffwood's approximately 7 acre plot west of the Snake River shall not be divided, but shall be conveyed by Staffwood to the City of Idaho Falls in connection with the Closing in order that each of the parties in their capacity of partners of Staffwood may receive equal benefit of the write off.

6. Conveyance of property in Property Sets A and B to the respective party shall occur contemporaneously with the Closing. No such conveyance or transfer of funds shall occur prior to Closing. [FN3:

4

This avoids piecemeal settlement and motivates the parties to close. As mentioned in footnote 1 above, Woody is ready to close as soon as Stafford is able.]

7. The parties agree that upon Closing, all debts, claims or obligations (a) owing to Staffwood from themselves or their respective entities, (b) owing to them from Staffwood, and (c) owing to each other (except for (i) continuing obligations of Stafford pursuant to Section 3.3 of the November 10, 2010 Settlement Agreement, and (ii) continuing obligations of the parties pertaining to the windup of SV Idaho pursuant to Section 4 of the July 5, 2012 Settlement agreement), if any, shall be released and settled by this Agreement.

8. In order to reduce taxes to the maximum extent possible, the parties agree to discuss and attempt to agree prior to Closing concerning ways by which Stafford's receipt of the 3 bid properties along with other division of cash and property to the parties hereunder may be treated overall as an equal distribution of Staffwood assets in liquidation of their ownership interest in Staffwood. If the parties cannot agree prior to Closing, Closing of the bid properties and the subsequent divisions shall take place exactly as set forth above.

9. Staffwood shall remain in existence after the closing until the end of calendar year 2014 in order that Staffwood may be used to complete a 1031 like-kind exchange if desired, provided that nothing shall require any action which increases the tax burden of the other party.

10. Staffwood shall then be dissolved prior to the end of calendar year 2014, unless it is being utilized for a 1031 like-kind exchange as described in paragraph no. 9 above; in which case, Staffwood will be dissolved upon completion of the 1031 transaction.

We look forward to hearing how Stafford would like to proceed.

On January 30, 2014, Stafford's attorney sent a letter via email to Woody's attorney that stated:

Stafford is pleased that Woody has accepted Stafford's settlement offer based on the terms communicated in my letter to you dated December 20, 2013. Please be advised that Stafford is willing to divide the remaining Staffwood property consistent with the terms outlined in your letter dated January 13, 2014, and Stafford has decided to choose Property Set B.

After additional correspondence between the brothers' attorneys, a dispute arose as to the precise terms of the agreements.

On March 7, 2014, Stafford filed his complaint, amended on March 17, for specific performance of the agreements. On April 14, 2014, Woody filed an answer, counterclaim and third-party complaint in which he contended that there was no binding agreement for the

purchase of the Bid Properties. On April 14, 2014, Woody filed a motion to dismiss or in the alternative a motion for summary judgment. On May 21, 2014, Stafford filed a motion for judgment on the pleadings asking the district court to find that the correspondence between the brothers' attorneys constituted enforceable contracts.

On July 28, 2014, the district court issued its opinion and order granting Stafford's motion for judgment on the pleadings and denying Woody's alternative motions to dismiss or for summary judgment. The district court held that the correspondence between the attorneys resulted in the formation of two contracts between the brothers. The district court determined that the December 20, 2013, letter and the January 13, 2014, reply letter created an enforceable contract for the sale of the Bid Properties. Likewise, the district court determined that the January 13, 2014, letter and the January 30, 2014, reply resulted in a contract for the division of the remaining Staffwood properties.

On September 3, 2014, Stafford filed a motion for attorney fees and costs. Stafford requested attorney fees under Idaho Code section 12-120(3) and under the 2012 Agreement. Woody opposed Stafford's motion, arguing that the fees were unreasonable and that Idaho Code section 12-120(3) was not applicable. On December 1, 2014, the district court granted Stafford's motion for attorney fees. Woody timely appealed.

## II. STANDARD OF REVIEW

"I.R.C.P. 12(c) governs motions for judgment on the pleadings. By its terms, Rule 12(c) treats such motions similarly to motions for summary judgment. Thus, the standard of review applicable to lower courts' rulings on motions for summary judgment also applies to motions for judgment on the pleadings." *Trimble v. Engelking*, 130 Idaho 300, 302, 939 P.2d 1379, 1381 (1997). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). "For purposes of a motion for judgment on the pleadings, the moving party admits all the allegations of the opposing party's pleadings and also admits the untruth of its own allegations to the extent they have been denied." *State v. Yzaguirre*, 144 Idaho 471, 474, 163 P.3d 1183, 1186 (2007). "All doubts are to be resolved against the moving party, and the motion must be denied if the evidence is such that conflicting inferences may be drawn therefrom, and if reasonable people

6

might reach different conclusions." *G & M Farms v. Funk Irr. Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991).

## III. ANALYSIS

We consider two primary issues on appeal: (1) whether Woody's appeal from the district court's decision as to contract formation is moot due to satisfaction of the judgment; and (2) whether the district court abused its discretion when it awarded Stafford attorney fees. Stafford contends that Woody's appeal is moot because Woody has already satisfied the judgment. Woody responds that his appeal is not moot for two reasons. First, Woody contends that he "only closed on the real estate transactions and cash disbursements because he was under a court order to do so *within ten days*." (emphasis in original). Woody argues that satisfaction of a judgment only renders an appeal moot when it is voluntary, and the district court's ten day requirement for specific performance renders Woody's satisfaction of the judgment involuntary. Second, Woody contends that his "appeal is not moot with respect to the fee award." We address these issues in turn.

### A. Woody's appeal from the district court's decision as to contract formation is moot.

As a preliminary matter, we note that nothing in the record before this Court shows that Woody satisfied the judgment. Instead, statements in both parties' briefing recognize that the judgment has been satisfied. However, based on those statements and the parties' representations at oral argument that Woody has satisfied the judgment, we find that the issue of contract formation is moot.

"A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Farrell v. Whiteman*, 146 Idaho 604, 610, 200 P.3d 1153, 1159 (2009). "An issue is moot if it presents no justiciable controversy and a judicial determination will have no practical effect upon the outcome." *Id.* "When a judgment debtor voluntarily pays the judgment, the debtor's appeal becomes moot, and it will be dismissed." *Quillin v. Quillin*, 141 Idaho 200, 202, 108 P.3d 347, 349 (2005).

Woody contends that his satisfaction of the judgment was involuntary; however, Woody has not pointed to any authority or evidence in the record to support his claim that the district court's ten-day stipulation for performance under the judgment forced Woody to involuntarily satisfy the judgment. The record shows that on August 21, 2014, Woody filed an objection to the district court's judgment entered on August 20, 2014. The objection was not to the judgment's

requirement of performance within a specified time; rather it was to the duration in which performance was required. Woody asserted that the judgment was not sufficiently similar to the terms of the correspondence that the district court found to have resulted in a contract. Woody identified a number of requested changes which would make the judgment conform more closely to the terms contained in the correspondence, including this objection: "The December 20 letter makes no reference to ten days for closing but rather refers to thirty days from signing of an agreement the parties never signed." We can discern no basis for concluding that a ten-day period for performance, rather than 30 days, rendered Woody's subsequent satisfaction of the judgment involuntary.

We note that Woody did not ask the district court to stay enforcement of the judgment, as permitted by Idaho Appellate Rule 13(b)(8). He did not ask this Court to stay enforcement of the judgment, as permitted by Idaho Appellate Rule 13(g). This is notable because Woody did file a motion to stay enforcement of the district court's award of attorney fees to Stafford.

Further, "[a] case is moot if the party lacks a legally cognizable interest in the outcome or 'if it does not present a real and substantial controversy that is capable of being concluded through judicial decree of specific relief.' " *Podsaid v. State Outfitters & Guides Licensing Bd.*, 159 Idaho 70, 73, 356 P.3d 363, 366 (2015) (quoting *Wade v. Taylor*, 156 Idaho 91, 96, 320 P.3d 1250, 1255 (2014)). Here, Woody asks this Court to "vacate the judgment on the pleadings . . . and remand this matter for further proceeding in the trial court consistent with applicable law regarding contract formation." Stafford responds:

> Woody has not requested any meaningful relief that the Court can grant. He has requested "that this Court vacate the judgment on the pleadings." However, doing so makes no sense without a request that the Court also undo the voluntary closing, and the transfers of real estate and disbursements of cash that took place at the closing. Woody has not requested this relief, which means that a judicial determination in Woody's favor "will have no practical effect upon the outcome" of the case.

We agree. If we were to grant Woody the relief that he requests, it would have no practical effect upon the outcome of this litigation. If Woody had prevailed in this appeal, in order to effectuate any practical change in the outcome this Court would have to sua sponte include directions on remand that the district court nullify any and all transactions that occurred to satisfy the judgment. Essentially, we would have to remand the case with instructions that the district court

somehow "put the toothpaste back in the tube." As a practical matter, we cannot see how this might occur.

Due to Woody's failure to seek a stay of the judgment and the inability to unwind the subsequent transactions, we hold that Woody's appeal on the issue of contract formation is moot. However, because Woody has not satisfied the district court's award of attorney fees, we will consider that issue.

**B. The district court did not err when it awarded Stafford attorney fees under Idaho Code section 12-120(3).**

Idaho Code section 12-120(3) provides:

> In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

I.C. § 12-120(3).

On appeal, Woody argues that Stafford was not entitled to attorney fees below under Idaho Code section 12-120(3) because Stafford was not the prevailing party in the action, Stafford's fees were unreasonable, and the gravamen of Stafford's complaint was not a commercial transaction.

**1. Stafford is the prevailing party.**

The district court determined that Stafford was the prevailing party. "In determining which party to an action is a prevailing party and entitled to costs, the trial court must, in its sound discretion, consider the final judgment or result of the action in relation to the relief sought by the respective parties." I.R.C.P. 54. Stafford received a judgment in his favor granting the relief requested in his complaint. The district court did not abuse its discretion by determining that Stafford was the prevailing party.

**2. The district court did not abuse its discretion when it determined that Stafford's requested attorney fees were reasonable.**

Woody argues the district court erred when it determined that Stafford's fee request was reasonable. Woody contends that "Stafford's motion for fees was not premised on the prevailing market rate for legal services in Idaho Falls. . . . Stafford's fee petition was based on the prevailing market rate in Salt Lake City, not Idaho Falls."

9

"The awarding of attorney fees and costs is within the discretion of the trial court and subject to review for an abuse of discretion." *Smith v. Mitton*, 140 Idaho 893, 897, 104 P.3d 367, 371 (2004). In its opinion and order granting Stafford's motion for attorney fees, the district court considered this issue and reasoned:

> Woody argues the hourly rate sought [by] Stafford for his counsel is not reasonable. Woody bases his claim on the standard rate in the Idaho Falls community. Again given the fact that both parties are represented by counsel outside of Idaho Falls, we do not feel compelled to hold the parties to the local community standard. Based on the affidavits of Stafford's counsel, this Court finds no reason why the rates requested are unreasonable.

Notably, Woody's attorneys are also from Salt Lake City. In his objection before the district court and again on appeal, Woody relies on an unpublished opinion from the United States District Court for the District of Idaho. *Monsanto Co. v. PacifiCorp*, No. CV 01 607 E LMB, 2006 WL 1128226 (D. Idaho Apr. 24, 2006). There, the federal magistrate considered a request for an award of attorney fees for attorneys from St. Louis, Missouri, and found that the prevailing hourly rate in St. Louis was significantly higher than that of local counsel.

Woody correctly quotes from that decision: "The fee applicant bears the burden of proving that the billing rates fall within the prevailing market rate in the community in which the case was tried." *Id*. at *6. However, Woody fails to note that the federal court cited Ninth Circuit authority in support of this statement. The court cited to *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir.1993), which held that "[r]easonable fees under § 1988 are calculated according to the prevailing market rates in the relevant legal community." *Id*. at 1405. Woody also fails to mention that *Gates* did not apply a community-specific standard, but looked to "the rates of attorneys practicing in the forum district."

We decline to follow the statement from *Monsanto* upon which Woody relies.[1] "[I]t is well established that 'the decisions of lower federal courts are not binding on state courts.' " *English v. Taylor*, No. 42947, 2016 WL 3853710, at *4 (Idaho July 12, 2016) (quoting *Dan Wiebold Ford, Inc. v. Universal Computer Consulting Holding, Inc.*, 142 Idaho 235, 240, 127 P.3d 138, 143 (2005)). In deciding this matter, we will apply our own precedent.

---

[1] We note that Woody's objection before the district court relied on factual findings by the magistrate in *Monsanto* as to what a reasonable hourly rate was in support of his claim that Stafford's attorneys' hourly rate was "excessive in light of relevant precedent from Idaho Courts." It is not a surprise that the district court did not rely on an eight year old case as establishing what a reasonable hourly rate was.

10

In *Lettunich v. Lettunich*, 141 Idaho 425, 111 P.3d 110 (2005), a case also involving litigation between brothers (Mike and Ed), we held that "the court should consider the fee rates generally prevailing in the pertinent geographic area." *Id*. at 435, 111 P.3d at 120. When the Lettunich brothers' conflict returned to us, it was a dispute over attorney fees. There, Ed, the brother against whom attorney fees were assessed, argued "that 'pertinent geographic area' is the Third Judicial District and that it does not include the neighboring Fourth Judicial District in which Boise is located." *Lettunich v. Lettunich*, 145 Idaho 746, 750, 185 P.3d 258, 262 (2008) (*Lettunich II*). We rejected that argument:

> The bottom line in an award of attorney fees is reasonableness. *See, Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.*, 139 Idaho 761, 86 P.3d 475 (2004) (award of attorney fees vacated where prevailing party did not provide the trial court with sufficient information from which to determine the reasonableness of the amount claimed). The pertinent geographic area is the area from which it would be reasonable to obtain counsel.

*Id*. at 750–51, 185 P.3d at 262–63. We then stated:

> On remand, the district court found that it was reasonable for Mike to obtain legal counsel from Boise, considering the complexity of this case and the time and resources that legal counsel would have to be able to devote to it. The time and resources necessary were due in large part to Ed's vigorous defense. During the course of the proceedings, Ed retained the services of six different law firms, including four located in the Fourth Judicial District—three in Boise and one in Meridian. The district court did not abuse its discretion in basing its award of attorney fees on the hourly rates charged by Mike's Boise counsel.

*Id*. at 751, 185 P.3d at 263. It is not unreasonable for litigants in Bonneville County to retain counsel from Salt Lake City. We note that parties appealing from litigation in southeast Idaho are commonly represented by attorneys from that city. As in *Lettunich II*, the district court focused on the bottom line: reasonableness of the requested fees and implicitly determined that it was reasonable for Stafford to retain counsel from Salt Lake City. We can find no abuse of discretion in this determination.

### 3. Idaho Code section 12-120(3) applies because the gravamen of the action was a commercial transaction.

Woody argues that the gravamen of Stafford's suit was not a commercial transaction but a "settlement of an ongoing legal dispute between two brothers." In its opinion and order awarding Stafford attorney fees, the district court concluded:

> This case arose as an attempt to determine whether a valid contract existed. This Court found the contract defining Woody's and Stafford's share of

11

the bid properties did in fact exist. Further, the dispute over the Bid Properties was a product of the voluntary 2012 Settlement agreement. Because the disputes between the Bid Properties and 2012 Settlement agreement are based on commercial transaction, this case falls under I.C. § 12-120(3).

We agree with the district court.

In *Garner v. Povey*, this Court explained the analysis used to determine whether to award attorney fees under Idaho Code section 12-120(3):

> Whether a district court has correctly determined that a case is based on a commercial transaction for the purpose of I.C. § 12-120(3) is a question of law over which this Court exercises free review. Idaho Code § 12-120(3) allows for an award of attorney fees to the prevailing party in a civil action to recover "in any commercial transaction." A commercial transaction includes all transactions except those for personal or household purposes. In determining whether attorney fees should be awarded under I.C. § 12-120(3), the Court has conducted a two-step analysis: (1) there must be a commercial transaction that is integral to the claim; and (2) the commercial transaction must be the basis upon which recovery is sought. The commercial transaction must be an actual basis of the complaint. The lawsuit and the causes of action must be based on a commercial transaction, not simply a situation that can be characterized as a commercial transaction. In other words, the relevant inquiry is whether the commercial transaction constituted the gravamen of the lawsuit, and was the basis on which a party is attempting to recover.

151 Idaho 462, 469, 259 P.3d 608, 615 (2011) (internal quotations, citations, and alterations omitted). Here, Stafford's complaint alleges: "The Bid Properties Purchase Agreement constitutes a valid and enforceable contract between Plaintiff and Defendant." The complaint continues: "The Division of Staffwood Properties Agreement constitutes a valid and enforceable contract between Plaintiff and Defendant." The claimed existence of a contract for a commercial transaction was clearly the basis of the complaint in this action; therefore, Idaho Code section 12-120(3) was applicable and Stafford was entitled to attorney fees as the prevailing party in the action.

## C. Stafford is entitled to attorney fees on appeal under Idaho Code section 12-120(3).

Stafford requests attorney fees on appeal under Idaho Code sections 12-120(1), and 12-120(3). Because we determine the issue of contract formation is moot, and because the district court did not err when it awarded Stafford attorney fees under Idaho Code section 12-120(3), Stafford is the prevailing party on appeal and is entitled to attorney fees under Idaho Code section 12-120(3).

## IV. CONCLUSION

We affirm the judgment of the district court, including its award of attorney fees. We award attorney fees and costs on appeal to Stafford.

Chief Justice J. JONES and Justices EISMANN, BURDICK and W. JONES, **CONCUR**.