# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49029

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | |
| | ) | **Boise, May 2023 Term** |
| v. | ) | |
| | ) | **Opinion Filed: August 30, 2023** |
| **JARED LYLE HEAD,** | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| **Respondents.** | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Oneida County. Javier L. Gabiola, District Judge.

The district court's order is <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender, Boise, attorney for Appellant. Kimberly Coster argued.

Raúl R. Labrador, Idaho Attorney General, Boise, attorney for Respondent. Kacey Jones argued.

---

BEVAN, Chief Justice.

This appeal arises from the district court's denial of Jared Head's motion to strike certain evidence supporting a restitution order. Jared and his wife, Teresa, worked as onsite managers at the Village Inn Motel in Malad City, Idaho. Following an investigation by the Oneida County Sheriff's Office, Jared and Teresa were separately charged with grand theft. After pleading guilty to grand theft, Jared was ordered to pay $24,535.23 in restitution for allowing people to stay at the motel without paying, and for accepting rent payments that he did not relinquish to the motel owners.[1] Relevant to this appeal, some of the State's evidence supporting the restitution amount related to a specific hotel guest–S.G.[2] Just before resting its case at the restitution hearing, the State disclosed that S.G. had been found incompetent to stand trial in an unrelated criminal case several

---

[1] This opinion will refer to Jared and Teresa by their first names so as to be clear who filed what pleadings.

[2] Based on the confidential nature of the information provided, this opinion will not disclose S.G.'s name.

months earlier. Jared then sought to strike any testimony, exhibits, and statements related to S.G., arguing the State withheld exculpatory evidence in violation of his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963) and in violation of his Sixth Amendment right to confrontation under *Crawford v. Washington*, 541 U.S. 36 (2004). The district court denied Jared's motion after concluding that his due process claim was moot because *Brady* did not apply to restitution hearings, which the district court couched as civil proceedings. Jared timely appeals, arguing that the district court erred in applying an incorrect legal standard to deny his motion to strike. For the reasons below, we affirm the district court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 26, 2018, the State of Idaho filed criminal complaints charging Jared Head with grand theft, possession of a controlled substance, and possession of drug paraphernalia. Jared's wife, Teresa,[3] was also charged with grand theft. Both pleaded not guilty to the charges and waived their preliminary hearings. Their cases were bound over to district court.

The district court held change of plea hearings for both, and the parties discussed their individual plea agreements on the record. At the hearing, Jared pleaded guilty to one count of grand theft, and one count of possession of drug paraphernalia. The State filed a nonbinding plea agreement with the district court under Idaho Criminal Rule 11(f)(1)(B). That agreement stated that if Jared pleaded guilty to grand theft and possession of drug paraphernalia, the State would dismiss a felony possession of a controlled substance charge. The State agreed to concur with the recommendation made in the presentence report (PSI) unless it recommended imposition of a prison sentence, in which case it would ask for no more than retained jurisdiction. Jared also agreed to pay any restitution that the district court imposed in its discretion, and the parties were free to argue all other terms.

On August 16, 2019, Jared was sentenced to a unified term of seven years, with three years fixed and four years indeterminate. The district court retained jurisdiction for 365 days, ordering that Jared complete a rider. Jared returned from the rider on June 23, 2020, and was placed on probation for four years. The State moved for restitution, and a restitution hearing (to be held jointly with Teresa) began after multiple continuances, on November 20, 2020.

---

[3] Teresa is not a party to this appeal, but Teresa filed the motion to strike and argued in support of the motion, which Jared joined.

Due to its length, the hearing was extended to January 15, 2020, at which time the district court heard additional testimony from two of the State's witnesses. After which, the following colloquy occurred:

> [PROSECUTOR]: So – and I forgot right before this hearing I had been – somebody asked if I had subpoenaed [S.G.], and I had not, which makes me assume that maybe he has been subpoenaed. So I guess my – the thing that I realized that maybe the parties should understand, and now that this [S.G.'s] become a significant topic of conversation with the sheriff too, I'm just now thinking of this.
>
> So [S.G.] has been charged with a DUI. It was, I think, late this last year. And in – I can't remember the exact dates. But ultimately we have recently, over the last months, couple months, had to be trying to deal with his case through this board of guardians and stuff, because ultimately [his counsel] had asked for a competency evaluation, and the competency evaluation came back that he was *not competent to testify*. So that was just recently in the last couple months.
>
> I – that's something I know that I don't believe the other parties do, and so I think that they should be aware of that. I'm not aware of that being an issue. In the evaluation there's no issue there in regards to two years ago. But at least at that point two months ago, that did come back, that competency evaluation.
>
> THE COURT: All right. Thank you, Mr. [prosecutor].
>
> [PROSECUTOR]: I just thought it important to mention. Sorry.

(Emphasis added).

The district court then inquired of defense counsel for both defendants regarding the revelation about S.G. Counsel for Jared then stated:

> Your Honor, I've been in contact with [S.G.], and – well, I think you can probably tell how my conversation went, because I asked about the mental problems. I obviously did not know that he had been deemed incompetent. So yes, I did send him a subpoena. I was – well, I was concerned whether he would show up. Certainly had some concerns about what he would say, based on my conversation.
>
> So what – and obviously this evaluation kind of changes things. I mean, I would . . . I don't want to drag this out, but I would – what I would ask the [c]ourt is to . . . that I be provided with that and so I can maybe raise some issues about his competency and maybe even going back. I mean, I know what [the prosecutor] said, but you know, I mean, who knows how long, you know, this mental condition has been going on. So that makes me even more concerned about just calling him as a witness now without really knowing what exactly he has going on, and I would like to know that.

3

[PROSECUTOR]: Your Honor, I accidentally misspoke. *He wasn't deemed incompetent to testify. He was deemed incompetent to stand trial, which basically is the same thing. I just misspoke.*

(Emphasis added).

Counsel for Teresa joined in the request for the evaluation, asserting that "it seems to me like a *Crawford* problem . . . ." Counsel added, "without [the evaluation], we can't make an informed decision on whether or not we need Sheriff Jones further." The prosecutor then replied:

If they feel they need to review that, I absolutely understand. That's why I brought it up. I didn't want it to be a surprise. So – in fact, I had not even thought about it until just – when I found out they were going to call [S.G.] to testify.

So I don't object to a continuance. My hope is if we can get all of the evidence on [today], then ultimately if the – if either party decides to not call [S.G.] to testify or to bring anything up that's put in the competency evaluation, then maybe we can just move on to the [c]ourt's decision that way . . . .

After the prosecutor's revelation and this discussion, both Jared and Teresa testified. At the close of their testimony, the district court continued proceedings to allow defense counsel time to review S.G.'s evaluation. A few weeks later, Teresa moved to strike all testimony and exhibits related to S.G. that the court might rely on to make a restitution decision as well as statements S.G. made to the police. Counsel for Jared filed a "Motion to Join the Motion of Co-Defendant." Both argued that all evidence relating to S.G. should be excluded because the State withheld exculpatory evidence in violation of Jared's and Teresa's Fifth, Sixth, and Fourteenth Amendment rights. The State countered that the untimely disclosure of evidence did not result in an incurable violation of due process. Following a hearing on the motion, the district court issued its memorandum decision and order denying defendants' motion to strike testimony, exhibits, and statements.

On May 28, 2021, the district court held the final restitution hearing. At the final hearing, Jared rested his case without submitting any other witnesses or evidence. Thereafter, the district court entered its decision, holding that Jared and Teresa were jointly and severally liable for the restitution amount of $24,535.23. Jared timely appealed.

## II. STANDARDS OF REVIEW

"When a violation of a constitutional right is asserted, we will defer to the trial court's factual findings unless those findings are clearly erroneous." *State v. Stanfield*, 158 Idaho 327, 331, 347 P.3d 175, 179 (2015) (citing *State v. Hooper*, 145 Idaho 139, 142, 176 P.3d 911, 914

(2007)). However, this Court exercises "free review over the trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found." *Id*.

"'[W]hether to order restitution, and in what amount, is within the district court's discretion and is guided by consideration of the factors set forth in Idaho Code section 19-5304(7).'" *State v. Wisdom*, 161 Idaho 916, 919, 393 P.3d 576, 579 (2017) (alterations original) (quoting *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011)).

To determine whether the district court abused its discretion, this Court evaluates "'whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.'" *State v. Bodenbach*, 165 Idaho 577, 591, 448 P.3d 1005, 1019 (2019) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

### III. ANALYSIS

#### A. The district court's decision denying Jared's motion to strike is affirmed.

Jared's argument on appeal is based on the motion to strike that Teresa filed, in which he joined. Jared argues that the State improperly withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and maintains that the district court should have stricken the evidence as a sanction against the State. From Jared's perspective, the district court abused its discretion in concluding that restitution is a civil issue, and no matter the nature of the proceedings, due process requires that a defendant be allowed the opportunity to contest the information on which the restitution award is based. As discussed below, we disagree with the district court characterizing the delayed disclosure as moot, but still agree that *Brady* was not relevant to the restitution hearing.

In the decision denying the motion to strike, the district court concluded that restitution hearings are civil proceedings; thus, the duty to disclose exculpatory evidence under *Brady* did not apply. Accordingly, the court held that the issue was "moot." The district court also explained that Jared did not have a constitutional right to confrontation after the trial stage of the case occurred. On appeal, Jared abandons both the *Brady* and *Crawford* arguments made below, but he maintains that "a proceeding to determine criminal restitution is not a civil proceeding[,]" but "a criminal proceeding and part of the defendant's criminal case." Jared also submits that—whether criminal or civil—the Due Process Clause of the Fourteenth Amendment mandates the opportunity to

5

contest the information on which the restitution order is based. We address these arguments in turn.

1. *A motion for restitution is a civil process even though it is ancillary to a criminal proceeding.*

First, Jared contends that the district court erred in concluding that, because restitution proceedings are civil, the duty to disclose exculpatory evidence under *Brady* is inapplicable. The district court held that the issue was therefore moot. While this issue likely turns on the semantics involved, the district court's ultimate conclusion was not erroneous: restitution proceedings are a civil process, even though they are ancillary to a criminal proceeding.

"[R]estitution is remedial, not punitive; it serves to compensate victims for their losses." *Wisdom*, 161 Idaho at 920, 393 P.3d at 580; *see also State v. Cottrell*, 152 Idaho 387, 398, 271 P.3d 1243, 1254 (Ct. App. 2012) ("[C]riminal restitution in Idaho is remedial and compensatory in nature, rather than punitive."); *State v. Mosqueda*, 150 Idaho 830, 833, 252 P.3d 563, 566 (Ct. App. 2010). The right to restitution is a question of civil law, because the right to recover restitution for "[e]conomic loss[4] shall be based upon the *preponderance of evidence* submitted to the court[.]" I.C. § 19-5304(6) (emphasis added); *see Hodge for & on behalf of Welch v. Waggoner*, 164 Idaho 89, 93, 425 P.3d 1232, 1236 (2018) ("Proof in a civil case need only be by a preponderance of the evidence.") (quoting *In re Eliasen's Est.*, 105 Idaho 234, 242, 668 P.2d 110, 118 (1983)). The civil nature of such a process is fortified further by the statutory parameters for awarding restitution: "Idaho Code [sections] 19-5302, 19-5304, and 19-5305 provide that [a] court in a criminal case can enter what is, in essence, a civil judgment for restitution against the defendant." *State v. McCool*, 139 Idaho 804, 806, 87 P.3d 291, 293 (2004).

That said, such civil judgments remain part of the *criminal* case. As Jared rightly points out, we recently held that while a victim has a constitutional right to restitution, *see* IDAHO CONST. art. 1, § 22, victims lack standing in a criminal case to independently seek renewal of a judgment for restitution. *State v. Poe*, 170 Idaho 34, 38–39, 506 P.3d 897, 901–02 (2022); *see also State v. Johnson*, 167 Idaho 454, 458, 470 P.3d 1263, 1267 (Ct. App. 2020) ("it is generally understood

---

[4] "'Economic loss' includes, but is not limited to, the value of property taken, destroyed, broken, or otherwise harmed, lost wages, and direct out-of-pocket losses or expenses, such as medical expenses resulting from the criminal conduct, but does not include less tangible damage such as pain and suffering, wrongful death or emotional distress." I.C. § 19-5304(1)(a).

6

while crime victims are sometimes present and often represented by counsel, the government is still the only party to the case, other than the defense, and procedurally, the prosecutor requests restitution.").

Jared relies on these two decisions to bolster his claim that a restitution hearing is a criminal proceeding, governed by criminal, rather than civil standards. But Jared's reliance is misplaced. While both cases hold that it is the State of Idaho, through the prosecuting attorney, that must seek restitution on a *criminal victim's*[5] behalf, these two cases continue to underscore that a victim's right to restitution, and the rules governing that process, are civil. *See Poe*, 170 Idaho at 40, 506 P.3d at 903 (the fact that "we have concluded victims do not have standing to intervene in a criminal case has no bearing on their ability to recover the restitution due on a *civil judgment*.") (emphasis added); *Johnson*, 167 Idaho at 459, 470 P.3d at 1268 (acknowledging that any economic losses awarded as restitution are based on the civil, preponderance of the evidence standard).

Thus, nothing in either case casts doubt on the civil process governing criminal restitution proceedings. Indeed, both cases show what the State advocates: restitution proceedings, while part of a criminal case, are distinct from a criminal sentence and are more appropriately considered to be a civil judgment against the criminal defendant. As a result, the civil standard of proof necessary to support a restitution judgment applies. Unlike a criminal proceeding, which requires the State to prove each element *beyond* a *reasonable doubt*, in a restitution proceeding the trial court must base the amount of restitution on the *preponderance of evidence*. *Compare Jackson v. Virginia*, 443 U.S. 307, 313–14 (1979) (explaining the State must prove each element of a criminal offense beyond a reasonable doubt), *with Watkins v. Fed. Life Ins. Co.*, 54 Idaho 174, 178, 29 P.2d 1007, 1009 (1934) ("civil cases are to be determined in accordance with the preponderance of the evidence and need not be established beyond a reasonable doubt.").

The district court held the *Brady* question that Jared raised below was "moot" because restitution proceedings are civil. "A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Smith v. Smith*, 160 Idaho 778, 784, 379 P.3d 1048, 1054 (2016) (quoting *Farrell v. Whiteman*, 146 Idaho 604, 610, 200 P.3d

---

[5] A criminal victim is defined to include "a person or entity, who suffers economic loss or injury as the result of *the defendant's criminal conduct*." I.C.§ 19-5304(1)(e)(i) (emphasis added).

1153, 1159 (2009)). "An issue is moot if it presents no justiciable controversy[,] and a judicial determination will have no practical effect upon the outcome." *Id.* Thus, the district court misspoke when it held this issue moot. Instead, the criminal standard requiring disclosure of exculpatory *Brady* material simply does not apply to a restitution proceeding as we explain below.

    *2.  Jared's due process rights were not violated.*

Though Jared does not frame his due process argument on appeal as invoking *Brady*, his argument below, and revised argument on appeal, necessarily implicate that standard. *See Thumm v. State*, 165 Idaho 405, 423, 447 P.3d 853, 871 (2019) (explaining that whether a defendant was prevented from using disclosed materials to prepare a defense is a *Brady* issue). The State, which also characterizes Jared's due process argument on appeal as a *Brady* argument, maintains that *Brady* is inapplicable to restitution proceedings because such proceedings do not determine guilt or punishment. *Brady* only applies to exculpatory evidence relative to the defendant's guilt for the underlying crime, or which may mitigate the sentence against him. *See State v. Lankford*, 162 Idaho 477, 503, 399 P.3d 804, 830 (2017) (explaining the State's duty to disclose exculpatory evidence under *Brady*); *State v. Campbell*, 170 Idaho 232, 247, 509 P.3d 1161, 1176 (2022). Restitution evidence is neither. *State v. Hall*, 163 Idaho 744 830, 419 P.3d 1042, 1128 (2017) (For *Brady* to apply, the evidence must be "material to either guilt or punishment."). *See Moore v. Illinois*, 408 U.S. 786, 794 (1972) ("The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment.").

Jared's guilt was determined, and his punishment rendered, well before the restitution hearings began, and long before S.G.'s competency to stand trial was evaluated for his own criminal case in 2020. Thus, we agree with the State that its late disclosure of S.G.'s mental evaluation was immaterial to Jared's guilt or innocence, and therefore does not give rise to a *Brady*-based due process claim.

Jared separately argues that, whatever the nature of the judicial proceedings, due process requires that a defendant be allowed the opportunity to contest information on which a restitution award is based, to present relevant evidence, and to be given a meaningful opportunity to be heard. While Jared is correct in a general sense, even considering his argument under a more broadly defined due process paradigm, he has failed to show that his due process rights were violated.

Procedural "[d]ue process . . . is not a concept to be applied rigidly in every matter." *Bradbury v. Idaho Jud. Council*, 136 Idaho 63, 72, 28 P.3d 1006, 1015 (2001). "It 'is a flexible concept calling for such procedural protections as are warranted by the particular situation.'" *Id.* (quoting *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 91, 982 P.2d 917, 926 (1999)). Thus, the due process requirements applicable to a criminal trial may differ from those applicable to restitution proceedings. *See Garcia v. State Tax Comm'n of State of Idaho*, 136 Idaho 610, 617 n.3, 38 P.3d 1266, 1273 n.3 (2002). While a defendant in a criminal restitution hearing does not forfeit due process rights after a guilty plea, due process is "not a concept to be applied rigidly in every matter." *Bradbury*, 136 Idaho at 72, 28 P.3d at 1015. "The minimal requirements are that 'there must be some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions. This requirement is met when the defendant is provided with notice and an opportunity to be heard.'" *Id.* (quoting *Aberdeen-Springfield Canal Co.*, 133 Idaho at 91, 982 P.2d at 926). Jared was provided both notice and an opportunity to be heard in multiple hearings, including those after the disclosure about S.G.

Jared does not suggest that he was arbitrarily deprived of his rights, nor does he make any claim that he did not have notice and an opportunity to be heard at the restitution hearing. More importantly, the State's late disclosure of S.G.'s evaluation did not prevent Jared from using the evaluation or its contents to support his position in the restitution proceedings. The State disclosed the evaluation at the January 15, 2021, hearing. By the time the district court denied Jared's motion to strike on April 20, 2021, three months had elapsed, giving Jared over 90 days to review the evaluation and seek court approval to contact the evaluator. Beyond that, over a month had passed between the district court's order denying the motion to strike and the final restitution hearing on May 28, 2020. Thus, Jared had ample time to determine whether and how to use the evaluation in his defense and to prepare his case accordingly. The district court noted this at the hearing denying Jared's motion to strike:

> [Y]ou are correct as I read Criminal Rule 16 that disclosure has to occur, and you're entitled to have the State disclose to you all evidence, witnesses, exhibits, those sorts of things in a restitution hearing so that you're adequately prepared.
> . . . .
>
> I don't think there's a dispute that the disclosure was late. But does that necessarily exclude any evidence related to [S.G.] when the [c]ourt could allow you and your client additional time in which to prepare your response or any witnesses, you

9

know, the like, so you have adequate time in which to counter what [S.G.] said or what the deputies have testified as to what [S.G.] informed them . . . .

The decisions not to call S.G. or the evaluator were made by Jared's counsel. Thus, he was not "prevented by the delay from using [S.G.'s evaluation] effectively in preparing and presenting [his] case." *See Thumm*, 165 Idaho at 423, 447 P.3d at 871. As a result, his argument for an alleged violation of his due process rights fails.

          a. <u>Jared failed to articulate how he was materially prejudiced by the State's late disclosure.</u>

Jared also maintains that the district court's decision not to strike S.G.'s testimony as a sanction was an abuse of discretion. As part of that argument, Jared proposes that the district court's failure to recognize its discretion to sanction the State for its late disclosure results from the court applying the wrong legal standards and its failure to exercise reason. But such a sanction would be permissible only if Jared had shown prejudice from the State's late disclosure. He did not do so.

"The trial court's broad discretion as to the admission and exclusion of evidence will only be reversed when there is a clear abuse of discretion." *State v. Ochoa*, 169 Idaho 903, 912, 505 P.3d 689, 698 (2022) (citing *State v. Folk*, 162 Idaho 620, 625, 402 P.3d 1073, 1078 (2017)). "In Idaho, two general rules guide a trial court in imposing sanctions. The trial court must [1] balance the equities by comparing the culpability of the disobedient party with the resulting prejudice to the innocent party and [2] consider whether lesser sanctions would be effective." *Erickson v. Erickson*, 171 Idaho 352, 362, 521 P.3d 1089, 1099 (2022) (quoting *Noble v. Ada Cnty. Elections Bd.*, 135 Idaho 495, 499–500, 20 P.3d 679, 683–84 (2000)). In criminal cases, "[w]here the question is one of late disclosure rather than failure to disclose, the inquiry on appeal is whether the lateness of the disclosure so prejudiced the defendant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial." *State v. Guerra*, 169 Idaho 486, 495, 497 P.3d 1106, 1115 (2021) (quoting *State v. Byington*, 132 Idaho 589, 592, 977 P.2d 203, 206 (1999)).

The same standard applies to civil restitution within a criminal case. *See Brauner v. AHC of Boise, LLC*, 166 Idaho 398, 410, 459 P.3d 1246, 1258 (2020) (holding that an untimely disclosure was not prejudicial when the document was disclosed before the trial and the opposing party was given adequate time to prepare a response); *City of McCall v. Seubert*, 142 Idaho 580, 586, 130 P.3d 1118, 1124 (2006) (holding that the district court "acted within the boundaries of its

discretion by weighing the prejudice to the Intervenors resulting from the late disclosure and the prejudice to the City[.]"). Thus, "[t]he defendant bears the burden of establishing prejudice by showing that there is a reasonable probability that, but for the late disclosure of evidence, the result of the proceedings would have been different." *Id.* (quoting *State v. Pacheco*, 134 Idaho 367, 370, 2 P.3d 752, 755 (Ct. App. 2000)).

On appeal, Jared does not point to *any* alleged prejudice flowing from the State's late disclosure that prevented him from receiving a fair hearing. Instead, S.G.'s initial interview with officers dovetailed with and was corroborated by the hotel's logs, officers' observations and interactions with S.G., and Teresa's and Jared's own statements that acknowledged S.G. stayed at the motel. This evidence was sufficient to establish the amount of restitution Jared owed, and S.G.'s later incompetency evaluation does not affect the admissibility of evidence surrounding S.G.'s stay at the motel two years earlier. As a result, any potential impeachment value from the evaluation was so minimal as to show no prejudice. Indeed, the word "prejudice" is conspicuously absent from Jared's brief.

More importantly, Jared *cannot* show prejudice from the State's late disclosure since S.G. remained available as a witness and the district court was willing to continue the proceedings to allow counsel to develop this part of their defense. Teresa's attorney argued below that S.G. was "incompetent to provide his own defense, let alone information about things that took place so long ago. So[,] I don't know if the State wants us to put [S.G.] on the stand to demonstrate his incompetence." This argument, however, misapprehends the relevancy of a *witness* having been found incompetent to stand trial. S.G. gave statements to police on May 23, 2018, and May 29, 2018. In the competency evaluation from his DUI proceeding conducted on July 30, 2020—over two years later, S.G. was deemed incompetent to stand trial in his defense. The State disclosed S.G.'s competency evaluation to Jared on January 15, 2021. The final restitution hearing took place on May 28, 2021—four months after the State's disclosure. Jared has not shown that the delayed disclosure of S.G.'s competency evaluation had any relevance to statements S.G. made to police nearly two years earlier.

"All witnesses are presumed competent to testify even if they are 'feeblemind[ed] or insan[e].'" *United States v. Cassidy*, 48 Fed. App'x. 428, 445 (4th Cir. 2002) (quoting *United States v. Odom*, 736 F.2d 104, 112 (4th Cir. 1984)). "The only permissible grounds for disqualifying a witness as incompetent are 'that the witness does not have knowledge of the matters

11

about which he is to testify, that he does not have the capacity to recall, or that he does not understand the duty to testify truthfully.'" *Id.* In other words, competency to testify as a witness refers to the witness's ability to understand the questions being asked and to provide accurate and reliable testimony. This standard is generally lower than the standard for competency to stand trial. *Compare Ridgley v. State*, 148 Idaho 671, 677, 227 P.3d 925, 931 (2010) ("The standard to determine competency to stand trial is whether the defendant has the capacity to understand the proceedings against him and [ ] assist in his defense.") (quotation marks omitted), *with Clark v. Gneiting*, 95 Idaho 10, 13, 501 P.2d 278, 281 (1972) ("To be competent to testify, a witness must have the ability to perceive, recollect and communicate with reference to the occurrences involved."). S.G. was found *incompetent to stand trial* on August 7, 2021, by a judge in that proceeding. S.G.'s competency to testify *as a witness* was never evaluated because, despite being available and under subpoena from his counsel, Jared did not call S.G. as a witness. No one raised the prospect below that S.G. was incompetent to testify as a witness; the only argument made was that S.G. was "not competent to stand trial or assist his attorney in his defense."

The district court asked whether the defendants planned to have S.G. testify. Jared's counsel said he had been in contact with S.G. and asked about mental health problems but he was unaware S.G. had been found incompetent and was concerned about what S.G. might say on the stand. The defendants requested a copy of S.G.'s evaluation and suggested they might raise an issue about his competency preceding the evaluation. The district court permitted Jared to review the evaluation and decide how to proceed, and even offered him additional time to do so. But rather than call S.G. or the evaluator as a witness, Jared simply joined Teresa's motion to strike the testimony, exhibits, and statements related to S.G. Although the district court denied that motion to strike, when the restitution hearing resumed, Jared proceeded without calling S.G. or his evaluator to testify.

Jared had notice that S.G.'s competency was questioned, and he had the opportunity to use S.G.'s evaluation in his restitution hearing, along with the opportunity to call witnesses (including S.G.) and present evidence. Jared decided not to present such evidence, other than his and Teresa's testimony, even though the record appears to show that S.G. was under subpoena issued at Jared's insistence. Jared had notice and the opportunity to present a defense related to S.G.'s credibility; but the record is clear that he chose not to do so. *See Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 91, 982 P.2d 917, 926 (1999) (quoting *State v. Rhoades*, 121 Idaho 63, 72, 822 P.2d

12

960, 969 (1991) (due process is satisfied when "the defendant is provided with notice and an opportunity to be heard.")).

As a result, the district court declined to analyze whether Jared was materially prejudiced after concluding that Jared's argument was moot because *Brady* did not apply. As we discussed above, *Brady* was not moot, but it was inapplicable, and the district court reached the correct conclusion. While a district court has the discretion to strike testimony as a sanction, the decision not to do so here, particularly considering the lack of prejudice, was not an abuse of discretion. We conclude that the district court applied the proper legal standard in reaching its discretionary decision to deny Jared's motion to strike.

## IV. CONCLUSION

The district court's decision denying Jared's motion to strike is affirmed.

JUSTICES BRODY, STEGNER, MOELLER, and ZAHN CONCUR.